GEORGE F. KIMBERLIN, ET AL., *v.* BERNETTA KIMBERLIN.

**Husband and Wife—Wife's Money Used to Buy Land.**

Where .the husband buys lands while the wife's money is still in the hands of the administrator and still subject to her right of settlement, and he agrees with or promises her to use her money to pay for the land and have it conveyed to her, her equity in the land is superior to the equity of her husband's creditors.

**Wife's Money Not in Possession of Husband.**

When a husband, before reducing the wife's choses to possession, promises her to .invest the proceeds in her name, he must be held to receive such proceeds in trust and not in his own right.

APPEAL FROM WASHINGTON CIRCUIT COURT.

April 2, 1878.

OPINION BY JUDGE COFER:

It is not rational that Mrs. Kimberlin's patrimony never came into the actual manual custody of her husband. It was paid to McElroy in payment of the purchase money for the land purchased of Brown, and when it was so paid the effect was precisely the same as if it had been received by her husband and paid by him for the land. McElroy was virtually the assignee of the husband, and the payment to him by Craycroft, as administrator of the father and grandfather of Mrs. Kimberlin, had precisely the same effect as if it had been made to her husband in stead of his assignee.

If, however, the husband bought the land,' and while the wife's money was yet in the hands of the administrator, and therefore still subject to her right to a settlement, he agreed with or promised her to use her money to pay for the land and to have it conveyed to her, her equity is superior to the equity of her husband's creditors.

The well established doctrine of courts of equity now is, that so long as the wife's choses-in-action remain in a situation in which she could, by application to a court of equity, have a settlement upon herself it is competent for the husband and wife to agree that he

will reduce them to possession and invest the proceeds for her bene-fit; and when the agreement attempts to secure to the wife only that which the chancellor would have secured to her had application been made to him at the time, the agreement will be enforced against the husband's creditors as long as such proceeds can be traced and identified. *Campbell v. Galbreath,* 12 Bush 459.

But the simple fact that land purchased by and conveyed to the husband was paid for with money coming to the husband in right of the wife does not give her an equity that she can assert against her husband's creditor. When before reducing the wife's choses to possession, the husband promises her to invest the proceeds in her name, he receives such proceeds in trust, and not in his own right. If he had not made the promise the wife might have taken steps to secure a settlement, and courts of equity cannot know but she would have done so if the promise had not been made. If hav-ing made the promise while it was yet in the power of the wife to compel a settlement upon her, the husband in violation of his promise invests the money in his own name, and courts of equity refuse to recognize the agreement and enforce the trust, they allow the wife to be deprived of her rights through the fraud of her husband.

But this salutary rule of equity is liable to be abused, and should therefore be cautiously applied. It is generally resorted to only after the husband becomes embarrassed, and when the temptation to color the facts is very great; and relief should be denied unless the alleged agreement be clearly established. The evidence in this case is very unsatisfactory.

That the land was paid for, in part at least, with money due to Mrs. Kimberlin, is clear. But the evidence offered to prove the alleged promise of her husband is only this—she testified that the land was bought as a home for herself and family, and that it was her understanding that the deed from Brown was to be made to her. Brown testified that it was his impression that the deed was to be made to her, but he could not say how he got that idea. But he also testified that M. H. Kimberlin said the land was all paid for, and he wanted a deed for his land, which rather negatives his impression that the deed was to be made to Mrs. Kimberlin.

It does not matter that Bannister, the creditor, and George Kim-berlin, the surety and purchaser, knew that Mrs. Kimberlin claimed the land and that it was paid for with money due to her from the estates of her ancestors. If she had established the alleged promise

of her husband to take the title to her those facts would have been important, but not having done so they cannot avail her.

The cases cited by counsel for Mrs. Kimberlin are not analagous to this. *Moore v. Moore,* 14 B. Mon. 259, was a contest between the wife and one to whom the husband had pledged the wife's chose in action as a mere security, which of course vested in the pledgee an equity only. The mere pledge of the note did not amount to a reduction to the husband's possession, and did not defeat the wife's equity.

*Sims v. Spalding,* 2 Duv. 121, was a case in which a creditor of the husband went into a court of equity to subject land paid for with money belonging to the wife which he could not reach without the aid of the chancellor. The chancellor refused to aid him without making a proper settlement on the wife.

In *Mallory v. Mallory's Adm'r,* 5 Bush 464, the husband's agreement was to invest the proceeds of the wife's land in other lands to be conveyed to her, and that agreement was enforced. In the case at bar, as we have seen, the wife's money was paid in discharge of the husband's debt for the land, and therefore Mrs. Kimberlin neither has nor asserts any claim to the money, but loses her claim upon an alleged agreement to take the title to herself, which agreement, as we have also seen, she failed to prove. Her husband's creditors found the legal title in him and subjected it by execution at law. She could only defeat by establishing an agreement or promise by her husband upon which he could be held to hold the land in trust for her.

We are therefore of the opinion that the court erred in its judgment.

Judgment *reversed* and cause remanded with directions to dismiss Mrs. Kimberlin's petition and to adjudge the land to George T. Kimberlin.

*W. H. Hays, for appellants.   R. J. Browne, for appellee.*